*By the Court,
Hitchcock, Judge.
The plaintiff claims title to the premises in controversy, in virtue of a sale made by the collector of Wood County, for county and township taxes, on the 15th Dec. 1826.
This lot, in the spring of the year 1823, was listed by the township lister of the town of Perrysburgh, in the name of an unknown ownerj and in conformity with the law then in force, was appraised at twenty dollars.
It was placed on the duplicate of county taxes for the same year, and charged with a tax of ten cents, being equal to five mills on the dollar. On the 15th of March, 1824, it was returned by the collector to the county auditor, delinquent for the non-payment of this tax. At the same time, other lots in the same town were returned delinquent. This delinquent list was not verified by oath.
In the spring of the year 1824, the lot was again listed in the name of unknown owners, and appraised at forty dollars. On the duplicate of this year it was charged with a tax of twenty cents, and also with the ten cent tax of 1823, amounting, together with a penalty of twenty-five per cent, on said ten cents, to thirty- two cents five mills. On the 1st of March, 1825, it was again returned delinquent, as before for the non payment of the taxes and penalty.
On the duplicate for the year 1825, the lot was charged with a tax for that year of twenty-five cents. It was also charged with the taxes of 1823-4, amounting for those two years to thirty cents, together *82 with a penalty of twenty-five per cent, on said thirty cents, amounting to seven cents five mills, making in the whole, including the tax for the year 1825, sixty-two cents five mills. This same year, a township tax was assessed on said lot, of ten cents. Neither the county nor township taxes were paid, and on account of Such non-payment, the lot was again, in March, 1826, returned delinquent. None of the foregoing returns of delinquency were verified by oath.
In the year 1826, the county auditor placed this lot upon the duplicate charged with the township tax for 1825, of ten cents, and penalty of twenty-five per cent., making in the whole twelve and a half cents, and with the county taxes for the years 1823-4-5, with penalties on the same of twenty-five per cent., making in the whole sixty-eight cents seven mills, and amounting, including county and township taxes and penalties, to eighty-one cents two mills.
On the 19th day of December, 1826, these taxes still remaining unpaid, the lot was sold by the collector of taxes, to the lessor of the plaintiff, and on the 27th day of the same month, the collector made ^return to the county recorder of the sale. This return was verified by oath, but in it the name of the purchaser was not specified. And on the same 19th day of December, the collector conveyed the lot to the lessor of the plaintiff, reciting in the deed that he was the purchaser at the sale for taxes.
Upon these facts the plaintiff relies as proving title in his lessor.
To this title the following objections are made.
1. It does not appear from the records of the auditor of the county as given in evidence, that the lists of delinquencies for the years 1823, 1824, and 1825, were sworn to by the collector.
2. It appears from the facts in the case, that the said lot was charged with and sold for a greater amount of tax, interest and penalties, than was actually due thereon.
3. The certificate or return of sale made by the collector to the recorder of the county, does not show to whom the lot was sold.
4. There is no sufficient evidence of the publication of the delinquent list.
Before considering these objections, it may be well to remark, that previous to the adoption of the ad valorem system of taxation in 1826, taxes for state and county or township purposes, have from the first organization of the state government, been levied upon different objects of taxation. The state revenues were derived from taxes upon land *83 -excepting lots in town; the county and township revenues principally from taxes upon personal property, town lots and houses. Hence different systems were adopted for the levying and collecting taxes upon these different descriptions of property, and these systems were prescribed in separate and distinct laws. These laws were changed from time to time, but still the distinction was kept up between such as were enacted for levying taxes upon land, and such as regulated county levies. In each township a lister was appointed, whose duty it was, relative to county levies, to take a list of such personal property, town lots and houses, as were subject to. county or ■township taxation, and it was further his duty, in conjunction with another township officer, denominated an appraiser, to appraise houses and town lots thus entered upon the list. These lists were returned to the commissioners of the respective counties, and from them the duplicate for county taxes was made out; and the taxes collected either by township or county collector, as the ease might be.
Having made these remarks, I will now proceed to examine the objections made to the plaintiff’s title in the case before the court. *And the first is that it does not appear from "the records of the -county auditor, that the several delinquent lists for the years 1823, 1821, and 1825, were sworn to.
It is clear that there is no such evidence, and if it is necessary to the validity of the plaintiff’s title, the objection is well taken. In the ■thiriteth section of the act of February 8th, 1820, “ levying a tax on land,” 2 Ch. St. 1106, it is made the duty of the collector to attest, under oath, the list of lands returned by him to the county auditor, as delinquent for the non-payment of taxes. But this has nothing to do with the case before the court. That refers to delinquencies under a law levying taxes for state purposes. The lot in controversy was sold under a law “ regulating county levies.” And the law under which the taxes were levied for-the non-payment of which it was sold, was -the act of 27th February, 1816, Ch. S. 987. It is to this act, then, and to those subsequently passed, amendatory thereto, and upon the same subject, we must look to ascertain the rights of the parties.
Counsel for the defendant infer the necessity of an oath from the third section of an act of the 27th January, 1823, amendatory to the act entitled “ an act regulating the duties of county auditors and ■county commissioners,” 2 Ch. St. 1256. This section provides, “ that the respective county auditors, on the final settlement with collectors, may, upon evidence to them satisfactory, make reasonable and just al *84 lowanee to them for delinquencies in collecting, which may be owing-to any persons who are chargeable in their duplicate, absconding, or being insolvent, and the said auditor shall examine the collectors under oath or affirmation, touching the delinquencies.” Counsel both for defendant and for plaintiff, seem to suppose that the delinquencies here referred to, are the delinquencies of lots not sold for taxes. But I apprehend they are mistaken, and that these delinquencies are entirely of a different character.
This section is a transcript of the twentieth section of the act of February, 1816, before referred to, Ch. S. 987, “ regulating county levies;” except that the county auditor is substituted for the county commisioners, and the oath of the party, for other testimony. But in-the act of 1816, there is no provision made for returning lots delinquent. where the tax upon them is not paid. On the contrary, it is-provided, in the twelfth section, “ that whenever the tax on any lot or lots is not paid, on or before the first day of November, annually, and-no goods and chattels can be found whereon to levy, the collector may levy on such lot or lots, thus charged,” and after having given ^thirty days’ notice of the time and place of sale, in the manner prescribed in the section, shall, if the tax remain unpaid on the day appointed for the sale, “ proceed to sell so much of the lot or lots thus charged, as will discharge the taxes and costs.” Ch. St. 989. There could then be no delinquency so far as town lots were concerned, unless from the want of purchasers.
The delinquencies contemplated in the twentieth section of the act' of 1816, and in the third section of the act of 1823, which is in fact but a continuation of the former, are specifically pointed out in those two sections. They are such as happen in consequence of the “ absconding or becoming insolvent” of any person who may have been charged with a tax upon the duplicate. The collector, when he received the duplicate, became chargeable with all the taxes contained therein, and was compelled to give bond in double the amount of tax charged in the duplicate, with security, “ conditioned for the faithful collecting and paying into the county treasury, the full amount of the taxes by him to be collected,” etc. Ch. St. 988. If taxes were not paid by a specified time, it was the duty of the collector to levy upon and sell the personal property of the delinquent or delinquents, to satisPy the amount of tax. Such being the duty and such the liability of the collector, it was just and proper, that if an individual whose-name was upon the duplicate, should abscond, or should become insol *85 vent, so as to place it beyond the power of the collector to make collection, he should be relieved. To give this relief was the design of the two sections referred to. And by them the county commissioners, in the one, and the county auditor, in the other, were authorized, in such cases and under such circumstances, to make to collectors “ reasonable and just allowances,” in settlement. In other words, they were authorized to allow to collectors a credit for such taxes as were upon their duplicates, that could not by any diligence be collected.
But there could be no such delinquency in the case of town lots. Upon these the tax levied attached as a lien, and for its payment, the lots themselves, as before stated, were to be sold. And there could be no cause why a collector should have credit upon his duplicate for the .amount of such tax, unless, as before remarked, the lot itself could .not be sold for the amount o* the tax.
The law of 1816 remained unchanged until January 29th, 1818, when an “ act to prevent the sale of town lots for taxes,” was enacted, .2 Ch. S. 1037. By the first section of this latter act, it is provided, “ that where the owner or owners of unimproved or unoccupied town lots, do not reside within the limits of such town, and the tax assessed *upon such lot shall not be paid within the time required by law, the collector shall make return of all such delinquent lots, to the .authority from whence they received their duplicate, whereupon a pen.alty of ODe hundred per centum, upon the amount of each year’s tax shall be incurred, and each lot shall be bound for the tax and penalty due thereon, and the owner or subsequent purchaser shall be liable .therefor.” This is the first law to be found upon our statute books, requiring town lots, upon which taxes were not paid, to be returned delinquent. Previous to this time, such lots, under such circumstances, .have been sold, but here was a partial change of the system. It did not extend to town lots generally, but to those only which were unimproved or unoccupied, and the owners of which did not reside within the limits of the town where such lots were situated. If upon lots of this description, the tax was not paid, it was the duty of the collector to return them delinquent. But there is nothing in the act which requires that this return shall be verified by oath.
The law was amended by an act passed January 29th, 1821, 2 Ch. .St. 1178, but this latter act makes no change in the former law, except to reduce the penalty from one hundred, to twenty-five per cent. Like the law to which it is amendatory, it requires that the collector shall ¿return a delinquent list, but it does not require that the same shall be -verified by oath.
*86 During the existence of this latter law, the lot now in controversy-was listed, appraised, taxed and returned delinquent for the non-payment of the tax of 1823.
The next law relative to the subject, is found in the ninth section of the act of February 23,1824, entitled an “ act defining the duties of collectors of county tax.” 2 Ch. St. 1384. This is but a repetition-of the first sections of the acts of 1818 and 1821, above referred to, with the following addition: “ and the trustees of all townships and-, officers of incorporated towns, shall in dike manner, cause all lots returned to them delinquent' for township or corporation tax, to be certified to the auditor of the county, stating the number and appraised, value, together with the tax and penalty due on such lot.”
The county taxes for the years 1824 and 1825, and the township tax for 1825, were assessed upon the lot in controversy after the enactment of this law of February, 1823, and the taxes not being paid, it was returned as delinquent. And in pursuance of the latter clause of the-section quoted, the delinquency for the non-payment of the township tax, was certified to the auditor of -the county by the trustees of the township of Porrysburg.
From a careful examination of all these different statutes, and we-^believe they are the only ones which have any bearing upon the question, we have been brought to the conclusion, that the law did not. require the list of town lots, returned by the collector of township or county taxes, as being delinquent for the non-payment of such taxes, to be verified by oath. Such oath was not expressly required, nor eanits necessity be inferred from implication. Should the enquiry be made why there is any difference in this respect between the return-of a collector of state, and the collector of county taxes, we can only reply that the difference exists in the laws, by which their duties are-prescribed. The reasons for the difference can not, probably, be very readily perceived.
The second objection to the title of the plaintiff is, that the said lot was charged .with, and sold for a greater amount of taxes and penalties, than what was due thereon.
In this particular, the counsel for defendant labor under a mistake. This lot was sold in pursuance of the law of January 18th, 1826, “ providing for the collection of taxes on lands and town lots which have accrued prior to the year one thousand eight hundred and twenty-six,” 2 Ch. St. 1519, in connection with the law of 1824, before referred to, “ defining the duties of county collectors.” In the sixth, *87 section of this act, it is provided, “ that where the county collector, or trustees of any township, or officers of any incorporated town, Or of any recorded town plat, shall have returned to the county auditor, a delinquent list of unimproved or unoccupied town lots or parts of lots, the owner or owners whereof do not reside within limits of such town \ on which the tax assessed has not been paid within the time required by law; such auditor is hereby required, on or before the first day of August next, to make out a duplicate of such taxes, thereon charging the amount due, whether for township, county, or corporation purposes, adding to the tax of each year a penalty of twenty-five per cent., together with the interest on such tax,” &e. In making out a duplicate in pursuance of this section, the county auditor charged the lot in controversy witb a township tax and penalty amounting to twelve and a half cents, and county taxes, interest and penalties, amounting to sixty- eight cents and seven mills. The amount actually due and owing, was as follows ;
County tax for 1823, 10 cents — Penalty 2.5 cts.=12.5
” ” 1824, 20 ”. ” 5. ” =25
” ” 1825, 25 ” ” 6.25 ” =31.25
Township tax, 1825, 10 ” ” 2.5 ” =12.5
81.25
^Whereas the amount actually charged, and upon which the land was sold, was eighty-one cents, two mills, being one half mill less than the amount actually due. To the amount of taxes and penalties,, should have been added the interest, which was not done, so that th<( lot, instead of being charged with too much, as is supposed by counsel, was charged with too little.
But it is insisted that the township tax should not have been included, because it is claimed there is not sufficient evidence of the defalcation or delinquency. There is precisely that kind and degree of evidence which is required by the statute, and this must certainly be held to be sufficient.
The third objection to the validity of the plaintiff’s title is, that the certificate or return of sale, made by the collector of taxes, to the recorder of the county, does not show to whom the lot was sold.
' The lot was sold, or ought to have been sold, according to the provisions of the act of 1824, “ defining the duties of collectors of county taxes,” 1 Ch. S. 1384. The seventh section of this act is as follows : “ Whenever any town lot or lots, or any part thereof, shall be sold at *88 vendue, by any collector of tax, agreeably to the provisions of this act, it shall be the duty of the collector to lodge with the recorder of the county, in which such lot or lots may be situate, within ten days after the vendue and sale aforesaid, the notification of such sale posted up by him, the newspaper containing the advertisement of such sale, if any, with a certificate, accompanying the same under oath, setting-forth the amount of tax charged on such lot, that such tax remained unpaid, and that such notification was posted up according to law, which notification and certificate shall be recorded by such recorder.”
It will be seen that there is nothing in this section requiring the col ■ lector to state the name of the purchaser in this return made to the veeorder. The object seems rather to have been to preserve evidence Of the notification and sale; for the section, after'having prescribed that the notification and certificate should be recorded by the recorder, provides, “ A certified copy of such record shall be competent testimony touching those facts, in any suit in which the validity of the collector’s deed may be brought in question, and the said newspaper shall be kept on file by said recorder, and said recorder shall be entitled to receive such fees of said collector for recording, as is given in other cases for similar services.”
By the next succeeding section, the collector is required to give the purchaser a certificate of purchase, “ and at any time thereafter, *make a deed to the purchaser,” and On or before the first Monday in January, then next following, he is required to “ transmitió the auditor of his county, a list of all lots or parts .thereof sold, also the purchaser’s name,’’ etc. Whether this return was made in the present case we know not, as there is no evidence upon this point. It is not necessary, however, that it should be done immediately after the sale. If it be made on the first day of January next succeeding, it is sufficient. Before this time a certificate to the purchaser must have been issued, and it may be that a deed has been executed. In fact in the oase before the court, the deed was executed on the 19th of December, the very day of sale, which, if the proceedings hitherto had been in conformity with law, vested a title in the grantee, and it would be rather extraordinary to hold that this title could be divested by the failure of the collector to do an act which he was subsequently bound to perform.
The last objection to the plaintiff’s title is, that there is no sufficient evidence of the publication of the delinquent list.
Before selling any town lot for taxes, it is by the sixth section of *89 ihe act of 1824, made the duty of the collector to give thirty days’ notice of the time and place of sale, “therein describing, the lot by number, the proprietor’s name, if known, and the tax due thereon, either by the publication of such notice in a newspaper, printed in the town where the lot lies, or by posting up notices- thereof in four public places in the said town, and one at the door of the court house of the ■county.”
The evidence before the court that this provision of the law was ■complied with, is contained in . a copy from the record of deeds m "Wood County, which purports to be a copy of the report of the county collector of Wood County, of the sale of in and out'lots in the town of Perrysburg for taxes. It is as follows : “ Having received • of the auditor of Wood County, in the State of Ohio, a duplicate containing the following lots in the town of Perrysburg, in said county, as having been returned delinquent for the non-payment of taxes, which accrued previous to the present year, 1826, with directions to sell the same, I have levied upon, and shall sell the said lots, at the ..court house of said county, on the 19th day of December next, at ten o’clock, A. M., or so much of each as may be sufficient to discharge the said taxes, interest and penalties, thereon due, with the costs that -shall have accrued, unless the same shall be previously paid, to wit, in lots charged to persons unknown.” Then follows a schedule of the "lots by their number, with the tax charged against-each, and in this schedule is included the lot in controversy.
*This notification bears dale at “ Perrysburgh, Wood County, Ohio, November 16, 1826,” and is signed by “Ambrose Price, collector.”
Next follows a Certificate in the following words : “ I hereby certify the amount of taxes, interest and penalties, placed opposite each of 'the town lots, in the within notification, to be the true amount charged in the duplicate therein mentioned," that the same remained unpaid, -and that the said lots were all sold whole and entire, for the said amounts, and legal costs, at vendue, in the said town of Perrysburg, at the time and place in said notification mentioned ; and that said notification was by me posted up as the law directs. Perrysburg, Wood county, Ohio, December 26, 1826. Ambrose Price, collector of taxes, for. Wood county.”
This certificate appears to have been sworn to before a justice of ■the peace, and with the notification, recorded by the recorder of Wood ■county, on the 27th day of December, 1826.
*90 This copy of the record, is, by the seventh section of the before recited act of 1824, competent testimony “ touching those facts,” stated in the notification and certificate. And being competent.evidence, it proves that the notification was posted up according to law, and of course there is legal and sufficient evidence of the publication of the delinquent list.
Prom a careful examination of the whole case, we entertain the opinion, from the facts before us, that the lessor of the plaintiff has a good and sufficient title to the premises in controversy.
New trial granted.